UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  09-21881-CIV-UNGARO/SIMONTON
(CONSENT CASE)

CCCS INTERNATIONAL,

     Plaintiff,

v.

FONTAINEBLEAU RESORTS, LLC
and TURNBERRY CONSTRUCTION, INC.,

     Defendants.

                                     /

## ORDER ON PLAINTIFF'S MOTION
## FOR VOLUNTARY DISMISSAL
## WITHOUT PREJUDICE AND WITHOUT COSTS

THIS CAUSE came before the Court upon the Plaintiff's Motion for Voluntary Dismissal Without Prejudice and Without Costs (DE # 107).  Defendant Fontainebleau Resorts, LLC  "Fontainebleau" filed a Response to the Motion (DE # 110) and Defendant Turnberry Construction, Inc., joined in Fountainebleau's Response (DE # 112).  Pursuant to the Consent to Exercise of Jurisdiction by a United States Magistrate Judge for Final Disposition form filed by the Parties, this matter was reassigned by the District Judge to the undersigned Magistrate Judge to conduct all further proceedings, including the entry of final judgment, pursuant to 28 U.S.C.A. § 636 (c) (DE ## 75, 76).

I.      BACKGROUND

This matter was initiated when Plaintiff CCCS International, LLC, ("CCCS") filed a two-count Complaint alleging Breach of Contract (Count I) and Unjust Enrichment/Quantum Meruit (Count II) against Defendants Fontainebleau Resorts, LLC, and Turnberry Construction, Inc., related to the construction of the Fontainebleau Miami Beach Hotel and Resort ("the project") in Miami, Florida.  In the Complaint, CCCS alleged

that CCCS is a South Carolina Corporation, Fontainebleau Resorts, LLC is a Nevada limited liability company, and Turnberry Construction, Inc. is a Florida Corporation.[1]  In addition, the Complaint alleged that pursuant to 28 U.S.C. § 1332, this Court had subject matter jurisdiction over this action because complete diversity of citizenship existed between the litigants and the amount in controversy exceeded $75,000.00 (DE # 1 at 2). Defendant Fontainebleau filed a Motion to Dismiss the Complaint asserting that the lawsuit should be dismissed because CCCS was not registered to do business in Florida, and because the unjust enrichment claim was not viable where the Parties had entered into an express contract (DE # 11).

On August 27, 2009, the Court issued an Order to Show Cause *sua sponte* raising the issue of whether the Plaintiff's original Complaint properly alleged complete diversity as required by 28 U.S.C. § 1332 (DE # 16).  The Court specifically referred to the fact that all members of a limited liability corporation must satisfy the diversity requirements of  § 1332, and directed the Plaintiff to "show cause in writing . . . why its Complaint should not be dismissed for lack of subject matter jurisdiction." (DE # 16 at 1).  The Order also provided that the Defendants could file a Response, if they so desired after the Plaintiff's response was filed.

Thereafter, Plaintiff CCCS filed a Response to the Order to Show Cause asserting, *inter alia*, that Plaintiff CCCS is a citizen of South Carolina but none of the Defendants, or their members are citizens of South Carolina (DE # 19 at 1).  In support of that assertion, CCCS listed the members of Fontainebleau Resorts, LLC and their states of citizenship

---

[1] In the Original Complaint, CCCS mistakenly identified itself as a corporation rather than a limited liability company (DE # 1 at 1).  CCCS corrected the error in its First Amended Complaint wherein CCCS is described as a South Carolina limited liability company (DE # 62).

as being either in Florida, Nevada or Delaware (DE # 19 at 3-4).  Attached to the CCCS

Response was a print-out from the Nevada Secretary of State that identified

Fontainebleau Resorts, LLC as a Delaware Limited Liability Company, and that listed five

of Fontainebleau's Managers and reported their addresses as either in Florida or Nevada

(DE # 19-2 at 2-6).  Defendant Fountainebleau did not file a response to CCCS' Response

to the Order to Show Cause.

After the Court denied the Defendants' Motions to Dismiss (DE # 22) which sought

dismissal on grounds other than lack of diversity jurisdiction, both Defendants filed

Answers and Affirmative Defenses to CCCS' Complaint (DE ## 36, 38).  In its Answer in

to the Complaint Defendant Fontainebleau admitted CCCS' allegation that Fontainebleau

Resorts, LLC was a Nevada limited liability company (DE # 36 at ¶ 2).  In response to the

allegations that Turnberry Construction, Inc., was a Florida corporation, and that

complete diversity of citizenship existed between the litigants, Defendant Fontainebleau

answered that it did not have sufficient information to admit or deny the allegations and

therefore denied those allegations and demanded strict proof thereof (DE # 36 at ¶ 3).

Defendant Turnberry answered that it was without knowledge regarding either the

allegations regarding Fontainebleau's location or the diversity jurisdiction allegations,

although Turnberry admitted that it was a Florida Corporation (DE # 38 at 1).

The matter was set for the two-week trial period commencing on May 10, 2010 and

a pretrial conference was set for April 16, 2010 (DE # 27).  On March 5, 2010, Defendant

Fontainebleau filed a Motion for Summary Judgment but made no reference to a lack of

diversity jurisdiction, but rather challenged the substantive merits of the Plaintiff's

allegations (DE # 49).

Prior to the pretrial conference, the Parties submitted their Joint Final Pretrial

Statement wherein they submitted that diversity jurisdiction pursuant to 28 U.S.C. § 1332 was the basis for federal jurisdiction (DE # 58 at 6).  However, at the April 16, 2010 pretrial conference, the Court again raised concerns about the adequacy of the Plaintiff's jurisdictional diversity allegations and granted the Plaintiff leave to amend the Complaint to properly allege the diversity of the Parties (DE # 60).

The Plaintiff then filed its First Amended Complaint (DE # 62) and Defendants filed their Answers and Affirmative Defenses (DE ## 65, 66).  The Amended Complaint alleged that Fontainebleau is a Nevada limited liability company engaged in systematic and regular business activities in Mimi-Dade County, Florida.  The Amended Complaint further alleged that complete diversity of citizenship between the litigants existed (DE # 62 at 1).  In its Answer to the Amended Complaint, Fontainebleau denied that it was a Nevada limited liability company and denied the Plaintiff's allegation that diversity existed, although the basis for that denial is not made clear (DE # 66 at 2).  In its Answer to the First Amended Complaint, Defendant Turnberry denied the allegations that diversity existed (DE # 67 at 1).

On June 2, 2010, the Parties filed a Consent to Magistrate Judge jurisdiction and the case was transferred to the undersigned on the same date (DE # 75).  At the June 2, 2010 Calendar Call, the Court again raised concerns about the adequacy of the Plaintiff's jurisdictional allegations regarding diversity, and directed the Plaintiff to file a Second Amended Complaint wherein allegations of diversity of the Parties were adequately alleged (DE # 74). In addition, the Court directed that the breach of contract claim was to be dropped against Turnberry and separate claims were to be plead for contract implied in law and contract implied in fact (DE # 74).  Finally, the Court extended the discovery deadline for subject matter jurisdiction only for 60 days and ordered that any motions to

dismiss for lack of subject matter jurisdiction had to be filed within 90 days (DE # 74).

Plaintiff then filed its Second Amended Complaint (DE # 77). The Second Amended Complaint alleges that Fontainebleau Resorts, LLC is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada, and that upon information and belief, it has no member that is a citizen of South Carolina or Florida (DE # 77 at ¶ 2).

Defendant Fontainebleau filed an Answer and Affirmative Defenses to the Second Amended Complaint wherein it admitted that it has no member that is a citizen of South Carolina, but denied that it had no member that is a citizen of Florida (DE # 78 at ¶ 2).

Defendant Turnberry, however, did not file an Answer to the Second Amended Complaint, but instead filed a Motion to Dismiss for Lack of Jurisdiction asserting that CCCS had failed to properly allege the citizenship of Defendant Fontainebleau Resorts, LLC, because it failed to list the citizenships of all of Fontainebleau's members (DE # 79). In Response, to the Motion to Dismiss, CCCS argued that the Motion was premature because the extended discovery period for conducting jurisdictional discovery had not yet expired (DE # 81).

Defendant Fontainebleau then also filed a Motion for Judgment on the Pleading and/or Summary Judgment wherein it challenged the adequacy of the Plaintiff's diversity jurisdiction allegations, including the fact that CCCS had failed to allege the citizenship of each member of Fountainebleau (DE # 84).

After Defendant Fontainebleau and Plaintiff CCCS cross-moved to compel discovery, the undersigned set the matter for a hearing (DE # 95).  At the hearing, both Plaintiff asserted that it was unable to list all of the members of Fontainebleau, LLC, for purposes of establishing diversity because Defendant Fontainebleau had failed to

respond to Plaintiff's discovery requests.  In addition, both Fontainebleau and CCCS conceded that they had not responded to each of the other Parties' discovery requests related to the jurisdictional issue, but stated that they had reached an agreement regarding the exchange of those documents and would submit an agreed order regarding the same.  The Parties further indicated that they had no objection to the Court holding any jurisdictional Motions in abeyance until discovery had been completed and the Parties had determined whether additional briefing on the jurisdictional issue was necessary.

In the order issued by the undersigned following the hearing, the Parties were ordered to submit an agreed order within fourteen (14) days setting forth the agreed-upon dates for the exchange of the requested and necessary jurisdictional discovery.   In addition, Defendant Fontainebleau Resorts, LLC, was ordered to use its best efforts to ascertain the citizenship of each of the Fontainebleau's members, including the individual citizenship of each of the members of the LLCs that are included in the collective membership of Fontainebleau, LLC., and provide that information to the Plaintiff (DE # 98, 100).

On February 23, 2011, Defendant Fountainebleau Resorts, LLC filed a Notice of Filing Names and Addresses of the Members of the Fountainebleau Resorts, LLC (DE # 103).  In that Notice, among other things, Fountainebleau stated, "Further, [Fountainebleau Resorts, LLC] is not in possession of the names and addresses of the member of the LLC(s) who or which are members of [Fountainebleau Resorts, LLC], but, in the interest of moving this matter expeditiously, is attempting to obtain the information from the LLC(S) informally." (DE # 103 at 1).  Attached to that Notice was a three-page list of names and addresses of approximately fifty-five Members of

6

Fountainebleau Resorts, LLC.  The states listed for those Members included New York, Massachusetts, Illinois, Maryland, California, North Carolina, Wisconsin, Nevada, Texas, Pennsylvania and Virginia.  However, the list contained duplicate names, contained incomplete information and listed what appears to be the work address for certain members rather than their home addresses, and addresses for investment funds for some of the members.  For example, Mr. Jeff Given is listed five separate times, each with an address of "John Hancock Strategic Income Fund, 101 Huntington Ave., 6th floor, Boston, MA 02199."  Similarly, the address for Member Michael Weilheimer is listed as "High Income Portfolio 225 State Street," and fails to provide a city or state as part of that address.

Thereafter, a status conference was held on the potential resolution of the jurisdictional issues, wherein Counsel for the Plaintiff advised that the Plaintiff had received no additional information from Defendant Fontainebleau regarding the citizenship of the Fontainebleau members.  Plaintiff stated that it therefore either needed to begin conducting third party discovery to ascertain the citizenships of Fontainebleau's members, or in the alternative, seek a stipulation of voluntary dismissal from the Defendants in order that the matter could be refiled in state court.  The Court directed the Plaintiff to file a motion regarding the disposition of the case.

The instant Motion for Voluntary Dismissal Without Prejudice and Without Costs (DE # 107) followed.

II.     **MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND WITHOUT COSTS**

The Plaintiff has filed the instant Motion seeking to voluntarily dismiss this action without prejudice and without costs pursuant to Federal Rule of Civil Produce 41(a)(2)

(DE # 107).  In the alternative, the Plaintiff moves for a ninety-day extension of discovery to permit it to complete subject matter jurisdiction discovery.  CCCS asserts that a voluntary dismissal of this action would permit the action to be refiled in state court and would allow the parties to avoid further costly discovery into Defendant Fontainebleau's members' citizenship.  In addition, the Plaintiff set forth the procedural background of the case and notes that Defendant Fontainebleau chose not to challenge CCCS' identification of Fontainebleau's members and their residences, and that it was not until February 2011 that Fontainebleau disclosed additional members of the company.  Further, the Plaintiff contends that at the last status conference on the issue, the Parties agreed that dismissal without prejudice is the best resolution to this federal action, so that the action may be refiled in state court. The Plaintiff however states that the Parties disagree as to who should responsible for paying the costs associated with federal action.

In Response, Defendant Fontainebleau objects to dismissal without the Plaintiff having to pay the costs associated with this action (DE # 100).  In this regard, Defendant Fontainebleau asserts that the Plaintiff should have addressed the diversity issue at the outset of the case, which would have permitted dismissal without the incursion of all of the costs and attorney's fees.   Defendant Turnberry has joined in Fontainebleau's opposition to the dismissal without costs being assessed against the Plaintiff (DE # 112).

III.     LAW & ANALYSIS

A.     Legal Framework

1.     Diversity Jurisdiction

Federal courts are courts of limited jurisdiction and are only empowered to hear cases within the judicial power of the United States as defined by either Article III of the

United States Constitution or otherwise authorized by Congress. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).  The requirements for federal jurisdiction predicated upon diversity are set forth in 28 U.S.C. § 1332, which provides for, among other things, jurisdiction over civil actions where the matter in controversy exceeds $75,000, exclusive of costs and interests, and is between citizens of different States. 28 U.S.C. § 1332 (a)(1).  In scenarios where natural persons are named as parties, citizenship, not residence, is the key fact for determining whether diversity jurisdiction exits.  *Taylor*, 30 F. 3d at 1367.  Similarly, for purposes of establishing jurisdiction for limited liability companies, unlike for corporations, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP. L.P. v. Comcast SCH Holdings. L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

**2.    Voluntary Dismissal Pursuant to Federal Rule of
Civil Procedure 41 (a)(2)**

The Plaintiff in this matter seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 41 (a)(2).  That Rule provides, in relevant part,

> (a) Voluntary Dismissal.
>
> (2) By Court Order; Effect. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

The Eleventh Circuit has stated that district courts enjoy broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986).  The purpose of Federal Rule of Civil

9

Procedure 41(a)(2) is to prevent voluntary dismissals which unfairly affect the other side and to permit the imposition of curative conditions. *Id.* (citation omitted). A district court is to "bear in mind principally the interests of the defendant, for it is the defendant's position the court should protect." *Id*. at 856. Thus, the crucial question is whether the defendant will lose any substantial right by the dismissal. *Potenberg v. Boston Scientific Corp*., 252 F. 3d 1253, 1255 (11th Cir. 2001) *citing Durham v. Florida East Coast* Ry. Co., 385 F. 2d 366, 368 (5th Cir. 1967). In addition, a plaintiff ordinarily will not be allowed to dismiss his suit without prejudice where the defendant has been put to considerable expense, except on the condition that a plaintiff reimburse the defendant for a portion of the expenses, including attorneys' fees. *McCants*, 781 F.2d at 860 (citations omitted).

However, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, other then the mere prospect of a subsequent lawsuit, as a result of that dismissal. *Id*. at 856-57. Thus, the fact that the "plaintiff may obtain some tactical advantage over the defendant in future litigation" does not bar a voluntary dismissal. *McCants*, 781 F.2d at 857. Instead, the court should "weigh the relevant equities to do justice between the parties as to each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate." *Id*. Finally, where a subsequent similar suit between the parties is contemplated, expenses awarded might be limited to those incurred in discovering information and researching and pressing legal arguments that will not be useful in the later suit. *Id*. at 860.

B.      Application of Law to the Facts of this Case

In this matter, the Plaintiff seeks to dismiss this action without prejudice and without bearing the costs of this litigation. In the alternative, the Plaintiff requests that if the Court is inclined to assess costs against the Plaintiff, that instead the Plaintiff be

permitted to conduct additional jurisdictional discovery.

The Defendants only oppose the dismissal without prejudice, if costs are not assessed against the Plaintiff for failing to meet its burden of establishing federal diversity jurisdiction, and agree that if the matter is not dismissed, the Plaintiff is entitled to conduct additional jurisdictional discovery. Thus, the Court must first decide whether the Plaintiff is entitled to voluntarily dismiss this case, and then decide whether costs or other conditions should attach to that dismissal as requested by the Defendants.

### 1.      Legal Prejudice to Defendants

In this case, it is undisputed that because Defendant Fontainebleau is a limited liability company, the Plaintiff must allege the citizenship of each member of that company in order to establish federal diversity jurisdiction.  In addition, it is clear that the Plaintiff has failed to do so and thus seeks to dismiss the action without prejudice. The Defendants have not asserted that they will suffer any legal prejudice if the matter is dismissed without prejudice.  Nor have the Defendants asserted that they will suffer any prejudice if this matter is refiled in state court.  Thus, the Defendants will not lose any substantial rights by the dismissal, and their positions will not be affected, let alone adversely affected, if this matter is dismissed without prejudice.  Rather, Defendants will only have to face the prospect of a subsequent lawsuit which, as stated above, is insufficient to establish prejudice.   Given these facts, the Plaintiff is entitled to a voluntary dismissal without prejudice.

 In addition, while the Plaintiff has requested that in the alternative to the matter being dismissed without prejudice, that Plaintiff be permitted to conduct additional jurisdictional discovery, the undersigned concludes that dismissal without prejudice is the more prudent course of action under the facts of this case.  Specifically, it is clear

that the Plaintiff has encountered significant difficulty in ascertaining the citizenship of all of the Defendant Fontainebleau's members.  It is likely that because the Plaintiff has been unable to obtain the information directly from Fontainebleau, that Plaintiff's continued attempts to discover such information will require costly and perhaps burdensome discovery from third parties.  Moreover, the record establishes that the litigants have already spent time and resources on attempting to ascertain the citizenship of Fontainebleau members, and, it is certainly possible, given the number of states where Fontainebleau members are citizens, that the discovery of the citizenship of all of the Fontainebleau members will destroy complete diversity and thus result in the case being dismissed, anyway.  As such, and considering the fact that the primary cause of action sounds in common law breach of contract, it appears that proceeding in state court will prevent the expenditure of unnecessary resources.

Therefore, under the circumstances of this case, the undersigned concludes that dismissal without prejudice is appropriate.

### 2.      Costs as Conditions of Dismissal

As stated above, the Defendants have not argued that they will be prejudiced if this action is dismissed without prejudice, rather they have asserted that they should be permitted to recoup the costs and expenses incurred in this action from the Plaintiff. According to the Defendants, because the Plaintiff chose to file this action in Federal Court, it was the Plaintiff's burden to establish that diversity existed in this matter and assert that had Plaintiff addressed this issue earlier in the litigation, fewer costs would have been incurred.

There is no question that the Defendants are correct that when subject matter jurisdiction is properly challenged, the litigant seeking to invoke federal jurisdiction

bears the burden of proof. See, e.g., *Rolling Greens M.P., L.P. v. Comcast SCH Holdings LLC,* 374 F.3d 1020, 1022 (11th Cir.2004) (the burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof); *Accord, Taylor v. Appleton*, 30 F. 3d 1367 (a litigant seeking to invoke federal diversity jurisdiction must affirmatively allege facts demonstrating the existence of jurisdiction).  In addition, the Defendants are also correct that because the Plaintiff has failed to put forth complete information concerning the citizenship of each limited liability company's membership, the Plaintiff has failed to demonstrate that this Court has subject matter jurisdiction over this action.

However, the existence of these two facts do not convince the undersigned that the Plaintiff should have to bear the costs of this federal action.  Indeed, in this case the failure of the Plaintiff to meet its jurisdictional pleading burden was due, in no small part, to Defendant Fontainebleau's failure to: first, early-on, dispute the Plaintiff's contention that no member of Fontainebleau was a citizen of South Carolina; and, second, to provide information regarding the citizenship of the Fontainebleau members once the Plaintiff, at the urging of the Court, and through discovery, sought to ascertain the citizenship of those members.  In this regard, the Court does not suggest that either of the Defendants bore the burden to establish, or even address, diversity jurisdiction, rather, the undersigned simply considers the actions of the Parties in determining whether the Plaintiff should bear the costs of this action.

In particular, as set forth above, when the Plaintiff first alleged in the Complaint that complete diversity existed because the Plaintiff was a resident of South Carolina, the Fontainebleau was a resident of Nevada, and Turnberry Construction was a Florida corporation, Defendant Fontainebleau admitted the allegations as to Fontainebleau,

**13**

despite the fact that Fontainebleau was not a Nevada limited liability company.  In addition, Fountainebleau responded in a single paragraph that it was without sufficient information regarding the citizenship of Turnberry and whether diversity jurisdiction existed, and thus, seemingly predicated the denial of the existence of jurisdiction upon its lack of knowledge regarding Turnberry's citizenship, and not the citizenship of its own members.

Further, when the Plaintiff, in response to the Court's Order to Show Cause regarding jurisdiction, listed the members of the Fontainebleau as residing in either Nevada or Florida, Defendant Fontainebleau did not file a response, state that the information was incorrect, or otherwise seek to have the matter dismissed for lack of subject matter jurisdiction.

Finally, when the Court ordered Defendant Fontainebleau to provide information regarding the citizenship of the members of Fontainebleau, as described above, Defendant Fontainebleau was unable to provide accurate and complete information, in order for the Plaintiff to ascertain and plead that diversity jurisdiction existed.

Thus, under the circumstances of this case, the undersigned finds that the costs incurred to date related to the diversity jurisdiction issue should not be fully borne by the Plaintiff; rather, each Party should bear its own costs and expenses.  This is particularly true when the information necessary to establish the citizenship of the members of Defendant Fontainebleau lay almost entirely in the possession of the Defendant Fontainebleau and its members.  Yet even the Defendant Fontainebleau is unsure of the citizenship of all of its members.  As such, it is unfair to require to the Plaintiff to bear the costs associated with litigating this matter, particularly where there is no indication that Plaintiff deliberately attempted to skirt the diversity jurisdiction

issue or otherwise attempt to ascertain the citizenship of the limited liability company members.

Moreover, many of the issues that were litigated between the Parties were not limited to the jurisdictional issues, but rather involved substantive issues that necessarily would be raised and litigated even if this action were litigated in state court. Thus, most of the expenses incurred by the Defendants in this litigation are not those incurred in discovering information and researching legal arguments that will not be useful in the later suit.[2] Simply put, under these somewhat unique facts, the undersigned concludes that the Plaintiff should not bear the Defendants' expenses in litigating this federal action, despite the action being voluntarily dismissed.

There is one caveat to this determination. If the Defendants are prevailing parties in a subsequently filed action in state court, and are entitled to recover attorneys fees or costs in that action, they shall be entitled to include the reasonable attorneys fees and costs incurred in this case as part of that recovery.

IV.     CONCLUSION

Therefore, based upon a review of the record as a whole and for the reasons stated above, it is hereby

ORDERED AND ADJUDGED that the Plaintiff's Motion for Voluntary Dismissal Without Prejudice and Without Costs (DE # 107) is GRANTED, as stated in the body of this Order. This action is dismissed without prejudice and each Party shall bear their

---

[2] Defendant Turnberry, who adopted Defendant Fontainebleu's response, has had little involvement in the portion of this case involving the determination of diversity jurisdiction, and thus the rationale for denying costs applies equally to it.

own costs and attorney's fees.

        **DONE AND ORDERED** in chambers in Miami, Florida, on September 29, 2011.


_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**


**Copies furnished via CM/ECF to:**
       **All counsel of record**